UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RYAN MONAHAN,

        Plaintiff,                                        Case No. 24-cv-11310

v.                                                          HON. MARK A. GOLDSMITH

RYAN SUMMERS, et al.,

        Defendants.

_____/

**OPINION & ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (Dkt. 37)**

Before the Court is Defendants' motion for summary judgment.  See Mot. (Dkt. 37).[1]

Plaintiff Ryan Monahan brought this action against Defendants alleging excessive force and failure

to intervene in violation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983.

See Second Am. Compl. (Dkt. 46).  Defendants bring this motion for summary judgment as to all

the counts against them.[2]  For the reasons that follow, the Court denies the motion in part as to

Counts I and II and grants the motion in part as to Count III.

**I.**        **BACKGROUND**

---

[1] The Defendants are Ryan Summers, Jordan Geyer, Richard Rackley, Kevin Bilbia, Nicholas Cherry, Brian Kress, Michael Bramlett, and Joshua Raczka.  Second Am. Compl. (Dkt. 46).  All Defendants were at all relevant times deputies at the Oakland County Jail.  Id. ¶¶ 6–13.

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the motion, the briefing also includes Monahan's response (incorrectly titled "reply") (Dkt. 41); Defendants' reply (Dkt. 43); Defendants' supplemental brief (Dkt. 47); and Monahan's supplemental brief (Dkt. 49).  Defendants' motion and Monahan's response include exhibit clips from the jail's security footage.  See 9/18/25 Text-Only Notice; 9/19/25 Text-Only Notice.  The Court refers to two of these clips in this opinion as the "Uncuff Video" and "Booking Detox R6 Video."  These clips can be accessed via the Clerk's Office.

The following facts are not in dispute.  On September 19, 2022, Monahan was arrested after being stopped for a traffic violation when law enforcement discovered he had multiple outstanding warrants.  Booking Card and Arrest Slip at PageID.376 (Dkt. 37-9); Monahan Dep. at PageID.813 (Dkt. 41-3).  After being arraigned on video, he was taken to the Oakland County Jail.  Booking Card and Arrest Slip at PageID.378.  Upon arriving at the jail, he was placed into a holding cell, which the parties refer to as the "uncuff" area.  See Uncuff Video.

The parties' accounts diverge as to what happened next and video captures some, but not all, of the events.  Defendants contend that while in the uncuff area, Monahan began making "nonstop," "disruptive," and "disrespectful" comments towards staff.  Statement of Material Facts (SOMF) ¶ 3 (Dkt. 37); Prisoner Incident Rpt. at PageID.294–297 (Dkt. 37-2); Summers Dep. at PageID.307–308 (Dkt. 37-3); Geyer Dep. at PageID.349 (Dkt. 37-4).  Defendants state that Monahan was told to stop yelling and making disrespectful comments, but he continued to do so.  Prisoner Incident Rpt. at PageID.294–295.  Because he was being disruptive, Defendants decided to relocate Monahan to maintain "order and safety" in the jail.  SOMF ¶7; Rackley Dep. at PageID.491 (Dkt. 37-16); Geyer Dep. at PageID.348, 350; Summers Dep. at PageID.304–305.

When Defendants approached the uncuff area to retrieve Monahan, Geyer told Monahan, who had his arms tucked inside his shirt, to put his arms through the sleeves of his shirt and exit the cell, at least twice.  Prisoner Incident Rpt. at PageID.295–296; Geyer Dep. at PageID.340.  Monahan did not comply with these commands.  Prisoner Incident Rpt. at PageID.295–296.  Because he did not comply, Rackley grabbed Monahan from inside the uncuff cell.  Id. at PageID.296.  They walked with Monahan in a "transport" position—Monahan was bent over at the waist and had deputies on all sides of him—to a new cell that the parties call "R6."  Monahan Dep. at PageID.825–826 (Dkt. 41-3); Prisoner Incident Rpt. at PageID.295–296.  Rackley held

2

Monahan's left arm, Summers held Monahan's right arm, and Geyer had Monahan's head. Prisoner Incident Rpt. at PageID.295; Summers Dep. at PageID.313; Rackley Dep. at PageID.478. They were accompanied by Cherry, Bramlett, Raczka, and Bilbia.  Bramlett Dep. at PageID.401 (Dkt. 37-12); Cherry Dep. at PageID.443 (Dkt. 37-14); Kress Dep. at PageID.455–457 (Dkt. 37-15); Raczka Dep. at PageID.553 (Dkt. 37-18).

According to Defendants, when Rackley grabbed Monahan from the uncuff cell, he immediately began resisting.  Prisoner Incident Rpt. at PageID.295–297.  They reported that Monahan attempted to "rip" his arms free from their grips, buckle his legs, and step on deputies' feet.  Id.; Summers Dep. at PageID.312–313; Rackley Dep. at PageID.487–488.  As they were about to enter R6, Geyer stated that Monahan bit him on the finger.  Geyer Dep. at PageID.352. Summers and Rackley heard Geyer say, "don't bite me."  Summers Dep. at PageID.306; Rackley Dep. at PageID.479.  In response to Monahan's bite, Geyer hit Monahan in the face one time with a "closed-fist strike."  Prisoner Incident Rpt. at PageID.296; Summers Dep. at PageID.324, 328–329.

Because Monahan had been arraigned on a misdemeanor, he needed to change into a jail uniform.  Strip Search Policy § 1.3 at PageID.392 (Dkt. 37-11); Summers Dep. at PageID.316; Geyer Dep. at PageID.355; Bramlett Dep. at PageID.405–406; Kress Dep. at PageID.459; Rackley Dep. at PageID.490.  Usually, a prisoner can change himself but because Monahan was resisting, the Defendants decided that they would remove his clothing for him, which is allowed by policy. Summers Dep. at PageID.317; Geyer Dep. at PageID.356; Strip Search Policy § 2.7(c) at PageID.394.

Once they reached R6, Monahan was ordered to lay down in a prone position.  Prisoner Incident Rpt. at PageID.297.  He did not comply so Geyer, Rackley, and Summers lowered him to

3

the ground into a prone position.  Id. at PageID.296–297.  Bilbia secured Monahan's legs so that Monahan did not hurt himself, Bilbia, or anyone else in the room.  Bilbia Dep. at PageID.420.

Defendants stated that while on the ground, Monahan continued resisting.  Summers Dep. at PageID.315; Geyer Dep. at PageID.360.  Geyer stated that Monahan kept "attempting to lift his head up" and "go back and forth" with it.  Geyer Dep. at PageID.345, 360.  Geyer stated that in his experience, movements like this indicate the individual is going to spit.  Id. at PageID.345.  Geyer testified that he did not push Monahan's head into the floor but that he was trying to "keep it from coming up."  Id. at PageID.346, 360.  Defendants state that the floor of R6 has a rough texture and because of Monahan's resistance, he scraped his face on the floor.  SOMF ¶ 20, 24; Summers Dep. at PageID.330.  Besides Geyer's one "closed-fist strike," no other Defendant hit or kicked Monahan.  Summers Dep. at PageID.323–324; Bramlett Dep. at PageID.409; Bilbia Dep. at PageID.424–425; Rackley Dep. at PageID.483.

Monahan has a different version of events.  Monahan states that he only made one disrespectful comment, stating "hey, tubby, what's the holdup?"  Monahan Dep. at PageID.822–823.  He contends that when Defendants came to take him out of the uncuff cell, they only stated, "hey gray shirt" and that he was not commanded to get up and walk towards them before he was taken out of the cell.  Id. at PageID.823–824.  Monahan also states that he did not resist officers at all and that he was not hit during the walk to R6.  Id. at PageID.823, 827, 829, 837–838.  He contends that he did not bite Geyer, explaining that he could not have bitten him because he has no teeth.  Id. at PageID.800, 816–817.

While in R6, Monahan testified that he never resisted and that he was continually being punched and kicked by Summers, Geyer, and Rackley until all his clothes were removed.  Id. at

PageID.829–831, 835–836.  He also asserted that Geyer held his face to the ground, resulting in scrapes on his face.  Id. at PageID.832.

Video shows that after Summers, Geyer, and Rackley take off all of Monahan's clothes, they leave R6 and Monahan puts on his jail uniform.  Booking Detox R6 Video at 3:48–4:52.  He is visibly bleeding from his face and there is blood on the floor of R6.  Id. at 4:06.  Because force was used on him, Monahan was examined by a nurse.  Id. at 6:57–8:15; Summers Dep. at PageID.327; Geyer Dep. at PageID.357.  Later that same day, Monahan was transported to and evaluated at McLaren Oakland Hospital.  McLaren Medical Documents at PageID.497 (Dkt. 37-17).  Monahan was treated for a mandibular fracture and a laceration to his left eyebrow.  Id. at PageID.510–511.

## II.   ANALYSIS[3]

Defendants argue they are entitled to qualified immunity as to Monahan's § 1983 claims.  Mot. at PageID.275–278; Def. Supp. Br. at PageID.1597.  "Qualified immunity protects government officials unless they (1) violated a constitutional right that was (2) clearly established."  DeVooght v. City of Warren, Michigan, 157 F.4th 893, 898 (6th Cir. 2025).  "A right is clearly established when every reasonable official would have understood that what he is doing violates that right."  Id. at 902–903 (punctuation modified).  The non-moving party bears the burden of showing that the right was clearly established by "identifying binding, on-point precedent."  Id. at 903.  "[B]ecause immunity protects all but the plainly incompetent or those who knowingly violate

---

[3] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

the law, this court must not define clearly established law at a high level of generality." Tlapanco v. Elges, 969 F.3d 638, 649 (6th Cir. 2020) (punctuation modified). "In determining whether a constitutional right is clearly established, we look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." Benison v. Ross, 765 F.3d 649, 664 (6th Cir. 2014) (punctuation modified).

When there is "a video tape capturing the events in question[,]" "we may not adopt a version of the facts that is blatantly contradicted by video footage." Shumate v. City of Adrian, 44 F.4th 427, 438 (6th Cir. 2022) (punctuation modified). If the videos leave "gaps or uncertainties," that can be interpreted in multiple ways, or do not show all the relevant facts, such facts should be viewed in the light most favorable to the non-moving party. Id.; Latits v. Phillips, 878 F.3d 541, 544 (6th Cir. 2017).

### A. Excessive Force

Monahan brings his excessive force claim under the Fourth and Fourteenth Amendments. Second Am. Compl. ¶¶ 36, 53. "Whatever the source of the law [Fourth or Fourteenth Amendments], in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the facts and circumstances of each particular case." Lombardo v. City of St. Louis, 594 U.S. 464, 466 n. 2 (2021) (punctuation modified).[4] The Fourth Amendment's protection against unreasonable seizures prohibits law enforcement from using excessive force against an individual "in the course of an arrest, investigatory stop, or other

---

[4] Monahan does not appear to contest this. Resp. at PageID.618 ("Plaintiff has alleged violations of [t]he 4th and 14th Amendment. The 4th Amendment has an 'objective reasonableness' standard that governs Plaintiff's excessive force claims. However under the 14th Amendment since the Plaintiff was a pretrial detainee, a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause.").

seizure[.]"  Graham v. Connor, 490 U.S. 386, 395 (1989) (punctuation modified).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Id. at 396 (punctuation modified).  Considerations to the reasonableness inquiry include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).

Monahan's excessive force claim comprises two distinct uses of force by Defendants when he was (i) repeatedly punched and kicked by Summers, Geyer, Rackley, and Bilbia and (ii) subjected to a strip search by all Defendants.  Resp. at PageID.609, 617, 625–626; Second Am. Compl. ¶¶ 35–44, 52–62.  The Sixth Circuit has cautioned against "treat[ing] all the challenged actions ... as one ongoing use of force rather than as discrete episodes."  Chaney-Snell v. Young, 98 F.4th 699, 725 (6th Cir. 2024) (emphasis omitted, punctuation modified).  In other words, a "reviewing court analyzes the subject event in segments when assessing the reasonableness of a police officer's actions."  Morrison v. Bd. Of Trustees Of Green Twp., 583 F.3d 394, 401 (6th Cir. 2009).

**1. Alleged Punching and Kicking by Geyer, Summers, Rackley, and Bilbia (Count I)**

Geyer, Summers, Rackley, and Bilbia argue that they are entitled to qualified immunity because Monahan has not identified authority that states that deputies may not use force to "relocate an uncooperative, disruptive detainee;" or "[p]erform a takedown or apply control techniques on a resisting inmate who bit an officer."  Mot. at PageID.277.

Defendants are correct that Monahan has not pointed to any clearly established authority that prevents Defendants' actions, as they describe them.  But there is a factual dispute over whether Defendants' version of the incidents actually occurred as Monahan disputes almost the entirety of the Defendants' version.[5]  Monahan asserts that he did not resist at all during the entire incident except for one discourteous comment, "hey tubby, what's the hold up?"  Monahan Dep. at PageID.823.  According to Monahan, when Defendants retrieved him from the uncuff cell, he was not told to "stand up" or "get up" before he was grabbed.  Id. at PageID.824.  A deputy only said, "hey, gray shirt."  Id.  He also states that he did not try to step on the deputies' feet during his transport, he did not bite anyone, and he did not resist while in the prone position in R6.  Id. at PageID.826.  He contends that he was not hit during the walk to R6, but that while in R6 he was subjected to repeated punches and kicks in the face and ribs during the entirety of the time that the deputies were removing his clothes.  Id. at PageID.829, 830, 832–837.  He also states that while in the prone position when he lifted his head up, deputies pushed his head to the ground.  Id. at PageID.832.

The video footage from the jail leaves "gaps and uncertainties" because it does not have sound and because Monahan is completely blocked from view by the Defendants when he is prone in R6.  See Uncuff Video; Booking Detox R6 Video.  Given that the videos do not "blatantly contradict" Monahan's version of events, at the summary judgment stage, the facts must be viewed

---

[5] Monahan cites two North District of Ohio cases which both found disputes of material fact in whether, and to what extent, excessive force was used when dealing with a resisting inmate.  Resp. at PageID.615–618 (citing McGovern v. Lucas Cnty., No. 18-2506, 2021 WL 1176737 at *5 (N.D. Ohio Mar. 29, 2021) and Reynolds v. Guerra, 670 F. Supp. 2d 633, 641 (N.D. Ohio 2009)).  These cases show a clearly established right as to Monahan's version of events, but not Defendants'.  See McGovern, 2021 WL 1176737 at *5 (holding that the defendant was not entitled to qualified immunity when he initiated an altercation with an inmate who had a "verbal outburst."); Reynolds, 670 F. Supp. 2d at 640–641 (holding that defendants were not entitled to qualified immunity when there was a dispute of fact over whether plaintiff provoked the use of force).

in the light most favorable to Monahan. Shumate, 44 F.4th at 438; Latits, 878 F.3d at 544. This is true even though every deputy deposed testified consistently that Monahan was disruptive in the uncuff cell, resisted during the entire incident, bit Geyer, and was only punched one time in response to the bite. Summers Dep. at PageID.304–307, 312–313, 320, 324, 328–329; Geyer Dep. at PageID.340, 344–347, 349, 351–352, 360; Bramlett Dep. at PageID.409, 411; Bilbia Dep. at PageID.422–425, 427; Cherry Dep. at PageID.439–440, 442; Kress Dep. at PageID.463; Rackley Dep. at PageID.475–476, 478–479, 481–483, 487–488, 492–493.[6]  Monahan's medical record from a later visit to a pain management clinic also raises a question of the origin of his mandible fracture. See 9/30/2022 Michigan Pain Management Record Medical Record at PageID.367 (Dkt. 37-8) (stating that on 9/19/22, the day before Monahan's arrest in this case, he was involved in a car accident where the airbags deployed and as a result of the accident, he sustained a "fracture[ed] nose and mandible fracture").[7]

At summary judgment, the Court cannot stand in the shoes of a jury and make a credibility judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Monahan's version of events—that he made one offensive comment and as a result was subjected to repeated punching and kicking while restrained in a

---

[6] Some of the Defendants testify that the Booking Receiving Tanks Video shows Monahan stepping on deputies' feet. See e.g., Bramlett Dep. at PageID.410; Bilbia Dep. at PageID.422. Based on the Court's review of the videos, it is unclear.

[7] In his deposition, Monahan disputes that he told Dr. Kimpton that this occurred. Monahan Dep. at PageID.819. Though earlier in the deposition, he agrees that he would have "no reason to lie to [Dr. Kimpton] about anything." Id.

prone position—violated his clearly established Fourth Amendment right to be free from excessive force as the force is clearly not proportional to the need for force. See Coley v. Lucas Cnty., 799 F.3d 530, 540 (6th Cir. 2015) (finding that "pretrial detainees had a clearly established right not to be gratuitously assaulted while fully restrained and subdued") (punctuation modified). The Court denies summary judgment as to Count I.

### 2.  Strip Search by all Defendants (Count III)

Defendants argue that Monahan's § 1983 claim for excessive force related to his strip search is barred by qualified immunity because Monahan cannot identify authority that a strip search "under circumstances involving inmate resistance and safety concerns" violates the Fourth Amendment. Def. Supp. Br. at PageID.1597.[8] Defendants explain that Monahan was "subject to a constitutionally permissible intake" strip search upon entry into the jail and that Monahan's entire claim is premised on failures to comply with internal policy, which standing alone, are not constitutional violations. Id. at PageID.1593.

Monahan concedes that by virtue of his arraignment, he had to change into a jail uniform upon entry into the jail. Pl. Supp. Br. at PageID.1614. But he argues that his constitutional rights were violated because Defendants: (i) did not receive supervisor approval before conducting the strip search; (ii) did not give Monahan the opportunity to change himself before conducting the

---

[8] Monahan and Defendants argue over whether Monahan was subjected to a "forced change-out" versus "strip search;" both terms are mentioned in policy. See Oakland County Sheriff's Office Policy No. 337 at PageID.391–394 (Dkt. 37-11). "Forced change-outs" seem to be a subset of strip searches. Id. There does not seem to be much difference between the two. The policy defines a strip search as "[a] search that requires a person to remove his or her clothing to expose underclothing, breasts, buttocks, or genitalia (MCL 764.25a(1))." Id. at PageID.391. Whereas the policy describes a "change-out" as when an "inmate or pretrial detainee" who must "change out of street clothes and into a jail uniform" is "noncompliant, then the clothes may be forcibly removed from the inmate." Id. at PageID.394. Given the summary judgment posture, the Court will use the term "strip search" as that is the term Monahan uses.

10

strip search; and (iii) the strip search was conducted in retribution for his "tubby" comment as he was "patted down extensively" at booking and he was the last detainee to arrive at the jail and therefore did not need to "immediate[ly] change." Pl. Supp. Br. at PageID.1613–1614. For the reasons that follow, the Court grants Defendants' motion for summary judgment.

Monahan does not explain how failing to first obtain supervisor approval or allowing him the opportunity to change himself is a violation of his constitutional rights. Resp. at PageID.625–626; Pl. Supp. Br. at PageID.1614–1616. But "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1992). "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure" that the movant has demonstrated the absence of a genuine issue of material fact. Id.

According to Defendants' version of events, they forcibly strip-searched Monahan because he was resisting. Summers Dep. at PageID.317; Geyer Dep. at PageID.356. But because Monahan contests this fact, and because this is summary judgment, the Court must view the facts in the light most favorable to Monahan, which are, that he was not resisting at all. Monahan Dep. at PageID.829–831, 835–836.

As Defendants point out, violations of internal policy, in and of itself, do not amount to a constitutional violation. Meier v. Cnty. of Presque Isle, 376 F. App'x 524, 529 (6th Cir. 2010). The Court found no authority that failure to obtain supervisor approval before conducting a strip search amounts to a constitutional violation. There is authority, however, that without a penological reason, forcibly taking off an inmate's clothes without first giving them an opportunity to change is a violation of an inmate's Fourth Amendment privacy right. See e.g., Muhammad v. Skinner, 193 F. Supp.3d 821, 835–836 (E.D. Mich. 2016) (denying summary judgment as to

11

plaintiff's Fourth Amendment privacy claim under § 1983 because "forcibly remov[ing]" plaintiff's clothes, for a penological reason that plaintiff denied, was "extremely invasive."); Williams v. City of Cleveland, 771 F.3d 945, 955 (6th Cir. 2014) (examining a detainee's Fourth Amendment privacy rights and finding that "absent a good reason" "[s]trip searches would be even more humiliating if, instead of giving detainees a chance to remove their own clothing, corrections officers simply did it for them."). These cases are different than Monahan's case, as Monahan does not bring a claim for violation of his privacy rights under the Fourth Amendment but rather a claim for an unlawful search and excessive force. Pl. Supp. Br. at PageID.1613–1616.[9]

As for Monahan's third argument, that the strip search was in retribution to him calling Defendants "tubby" and that he was the last detainee at the jail, Monahan provides no citation to the record that supports his position. See Resp. at PageID.608; Pl. Supp. Br. at PageID.1614. Arguments in briefing, without citations to evidence on the record, are insufficient to survive summary judgment. See O'Shea v. Detroit News, 887 F.2d 683, 688 (6th Cir. 1989) ("[E]vidence offered by the plaintiff (who does not make any citations to the record in her brief) was insufficient to withstand a motion for summary judgment.").

Defendants also prevail on qualified immunity grounds because Monahan has failed to provide authority that failing to obtain supervisor approval, not allowing him to change himself, or conducting a strip search in retribution to an offensive comment were "clearly established" excessive force violations at the time of the strip search. Summary judgment is proper as to Count III.

---

[9] Monahan does cite cases in his supplemental brief that talk about privacy rights related to strip searches. See e.g., Pl. Supp. Br. at PageID.1613, 1616. But he does not describe his claim as a privacy claim. He describes it as "protect[ing] against unreasonable searches and seizures," id. at PageID.1613, and that "Defendants used excessive force during the strip search," id. at PageID.1615–1616.

**B.  Failure to Intervene by Cherry, Kress, Bramlett, and Raczka (Count II)**

"[A] police officer who fails to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."  Floyd v. City of Detroit, 518 F.3d 398, 406 (6th Cir. 2008) (punctuation modified).  "Officers cannot be held liable under this theory if they do not have a realistic opportunity to intervene and prevent harm."  Wells v. City of Dearborn Heights, 538 F. App'x 631, 640 (6th Cir. 2013) (punctuation modified).

Defendants Cherry, Kress, Bramlett, and Raczka argue that they should be granted summary judgment as to Monahan's failure to intervene claim against them because there is no evidence of a constitutional violation as the record does not contain evidence of excessive force.  Mot. at PageID.281–284.  The Court, however, viewing the events in the light most favorable to Monahan, did find sufficient evidence of excessive force.  Thus, Defendants' motion for summary judgment as to Count II is denied.

### III.    CONCLUSION

For the reasons set forth above, the Court denies Defendants' motion for summary judgment in part as to Counts I and II and grants Defendants' motion in part as to Count III (Dkt. 37).

**SO ORDERED.**

Dated: March 19, 2026                              s/Mark A. Goldsmith
Detroit, Michigan                                    MARK A. GOLDSMITH
                                                     United States District Judge

13

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager